IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DR. ANILA DAULATZAI, | * | |
| Plaintiff, | * | |
| v. | * | |
| | | CIVIL NO. JKB-21-0590 |
| STATE OF MARYLAND, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This case arises from Plaintiff's removal from a flight operated by Defendant Southwest Airlines Co. ("Southwest") in September 2017. Plaintiff brings claims against Southwest and the State of Maryland ("Maryland," and collectively with Southwest, "Defendants") for their roles in Plaintiff's removal from the flight and subsequent detention and prosecution for charges stemming from her removal. Both Defendants have filed Motions to Dismiss (ECF Nos. 41, 42) to which Plaintiff has not responded. Accordingly, the motions are ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Defendants' Motions shall both be GRANTED.

### I.   *Factual and Procedural Background*[1]

On September 26, 2017, Plaintiff was ticketed to fly on Southwest Airlines Flight 1525 from Baltimore to Los Angeles, a flight she took routinely to care for her father. (Second Am. Compl. ("SAC") ¶¶ 8–9, ECF No. 40.) Prior to boarding the flight, Plaintiff noticed several dogs in the waiting area and asked a Southwest agent how many dogs would be on her flight. (*Id.* ¶¶

---

[1] The facts in this section are taken from the Amended Complaint and construed in the light most favorable to Plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

1

11, 13.) Plaintiff, who "has an allergy to dogs that, at its most extreme, causes itchy eyes and a runny nose," was informed that only one dog would be on the flight and that it would be seated near the front of the plane. (*Id.* ¶¶ 12–13.) To avoid issues with her allergies, Plaintiff "took a seat near the rear of the aircraft,"[2] where she was informed by a flight attendant that there were, in fact, two dogs on the flight, but that both were seated near the front of the aircraft. (*Id.* ¶¶ 14–15.) Plaintiff confirmed that this was not problematic as "she has a dog allergy, but it is not a life-threatening one." (*Id.* ¶ 15.)

Shortly thereafter, another flight attendant approached Plaintiff and informed her "that, in the event that she needed an EpiPen, there was one on board the plane." (*Id.* ¶ 16.) Plaintiff thanked the flight attendant but reiterated that her allergy was "not that severe and shared that she had never needed to use an EpiPen before." (*Id.*) Various other Southwest personnel followed up with Plaintiff about her allergy, "and each time she reiterated that her allergy was not life-threatening." (*Id.*)

Plaintiff was then approached by an MTA Police Officer who asked if she had a *food* allergy. (*Id.* ¶ 17.) Plaintiff attempted to clarify that she had a non-life-threatening dog allergy, but the officer insisted he had been informed by various people that she had a food allergy and "that he had been called to discuss her food allergies." (*Id.*) After Plaintiff requested to speak to whoever informed the officer that she had a food allergy, he returned with Captain Darren Medeiros, who immediately told Plaintiff that "I do not feel comfortable with you on this plane." (*Id.* ¶¶ 17–18.)

Plaintiff tried to explain to Captain Medeiros that "she did not have any food allergy and her dog allergies are not life-threatening," and that "she was her sick father's primary caretaker

---

[2] Presumably Plaintiff self-selected a seat away from the dogs aboard the flight because "[u]nlike most other airlines, Southwest does not assign seats." (Southwest Mot. Dismiss Mem. Supp. at 32 n. 11, ECF No. 42-1.)

and needed to be in Los Angeles the following morning." (*Id.* ¶ 19.) While Captain Medeiros "acknowledged that [Plaintiff] did not have a food allergy" he "maintained that she had a life-threatening dog allergy . . . and continued to assert without any further explanation that he did not feel comfortable with her on the plane." (*Id.*) Captain Medeiros ultimately "summoned additional MTA Police Officers to the aircraft and requested for Dr. Daulatzai to be removed from the plane." (*Id.* ¶ 20.)

At Captain Medeiros' direction two "MTA Police Officer began lifting [Plaintiff] out of her seat by her belt loops." (*Id.* ¶ 22.) Plaintiff, who was pregnant with her first child and concerned "about her health and that of her unborn child [ ] immediately informed them that she was pregnant and would walk off the aircraft by herself." (*Id.* ¶ 23.) Despite this, Plaintiff was "physically grabbed and dragged/pushed [ ] from the plane." (*Id.* ¶ 26.) Plaintiff alleges that the officers who removed her from the flight commented that "she looked like 'some sort of teacher' and said that she was 'going to learn a lesson today'" and then "high fived" each other after successfully removing Plaintiff from the flight. (*See id.* ¶¶ 22, 27.) A video of Plaintiff's removal from the flight was recorded by a passenger and ultimately went viral. (*Id.* ¶ 34.) Southwest later issued at least two public statements about the matter. (*Id.* ¶ 35.)

Following her removal from the Southwest flight, Plaintiff "was told she was being held for questioning" but was later "placed under arrest without a warrant and charged with numerous offenses." (*Id.* ¶¶ 29–30.) She was then "taken to the police station . . . booked, fingerprinted, photographed, and then released on her own recognizance . . . the morning of September 27, 2017." (*Id.* ¶ 31.) The majority of these charges were ultimately *nolle prossed*, but Plaintiff was found

guilty and received probation before judgment on the charge of disorderly conduct. (*See* Daulatzai Criminal Trial Docket at 8–12, Maryland Mot. Dismiss Ex. A, ECF No. 41-2.)[3]

Plaintiff, a socio-cultural anthropologist, describes herself in the Complaint as "non-white and ha[ving] brown skin" and explains that "[w]hile phenotypically, it may be difficult to place [her] ancestral origins, she clearly presents and is perceived as non-white." (SAC ¶ 6, ECF No. 40.) She alleges that her removal from the Southwest flight and subsequent arrest were racially motivated, that Southwest's concern about her allergies was pretextual, and that both Defendants violated state and federal law.

On September 22, 2020, Plaintiff filed a complaint in the Circuit Court for Anne Arundel County, alleging various state law tort claims on behalf of herself and her husband, Roger Begrich. (*See* ECF No. 2.) After Defendants filed motions to dismiss that complaint, Plaintiff amended her complaint on February 23, 2021—removing her husband as a plaintiff and asserting for the first time federal statutory and constitutional claims against Defendants. (*See* ECF No. 3.) Based on the federal claims, Defendants removed the case to this Court (ECF No. 1 at 2–3), and moved again to dismiss. (ECF Nos. 13, 16.) In response, Plaintiff filed what was styled as an Amended Complaint. (ECF No. 22.) Ultimately, the Court determined that this amendment constituted a Second Amended Complaint, requiring Plaintiff to seek leave to amend. (ECF No. 39.) However, over Defendants' objections that amendment would be futile (*see* ECF No. 29), the Court granted leave to amend. (ECF No. 39.) Defendants now move to dismiss the Complaint for a third time. (ECF Nos. 41, 42.)

---

[3] Courts may take "judicial notice of 'matters of public record' without converting a Rule 12(b)(6) motion into a motion for summary judgment." *Haley v. Corcoran*, 659 F. Supp. 2d 714, 722 n. 4 (D. Md. 2009) (citation omitted). When taking judicial notice of other court proceedings "generally, a court will recognize only indisputable court actions, such as the entry of a guilty plea or the dismissal of a civil action." *United States v. Daley*, 378 F. Supp. 3d 539, 547 (W.D. Va. 2019) (quoting *in re Omnicare Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014)). Accordingly, here, the Court will take judicial notice of the disposition of Plaintiff's state prosecution.

4

## *II.    Legal Standard*

When "considering a motion to dismiss" pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

## *III.   Analysis*

In cases "when a plaintiff fails to oppose a motion to dismiss, a district court is 'entitled, as authorized, to rule on the . . . motion and dismiss the suit on the uncontroverted bases asserted.'" *E.g. Benton v. Bank of Am.*, Civ. No. PX-16-0613, 2017 WL 588468, at *2 (D. Md. Feb. 14, 2017) (quoting *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)); *Belyakob v. Med. Sci. and Computing*, Civ. No. PWG-13-3657, 2014 WL 12768920, at *2 (D. Md. May 19, 2014) (internal quotation marks and citation omitted). That said, "a plaintiff's failure to oppose a motion to dismiss is no guarantee of victory for the Defendants where the motion itself is meritless." *Benton*, 2017 WL 588468, at *2. Here, Defendants' Motions are far from meritless and rather provide multiple independent grounds for dismissing the claims in the Second Amended Complaint.

5

## A. *Claims Against Southwest (Counts I, II, and VI)*

Plaintiff brings three claims against Southwest: a claim under 42 U.S.C. § 1981, a claim for malicious prosecution, and a claim for negligence. (SAC ¶¶ 38–58, 75–76.) Southwest's broadest argument for dismissal is that it all of Plaintiff's claims must be dismissed as barred by the Airlines Deregulation Act ("ADA").

First, Southwest argues that Plaintiff's federal discrimination claim is barred by 49 U.S.C. § 44902(b) which provides that "an air carrier . . . may refuse to transport a passenger . . . the carrier decides is, or might be, inimical to safety." Courts have explained that the broad discretion afford by Section 44902(b) "does not merely create a defense: the statute is an affirmative grant of permission to the air carrier." *Cerqueiro v. American Airlines, Inc.*, 520 F.3d 1, 13–14 (1st Cir. 2008). Thus, to succeed on a federal discrimination claim against an air carrier for a decision to remove a passenger for safety concerns "plaintiff [ ] carries the burden to show that § 44902(b) is inapplicable." *Id.* at 14. To do so a plaintiff must show that a "pilot's opinion under section 44902 was [not] justified by a reasoned and rational appraisal of the facts known to the pilot at the time," i.e., that it was "arbitrary and capricious." *Karrani v. Jet Blue Airways Corp.*, 825 F. App'x 535, 536 (9th Cir. 2020); *Cerqueira*, 520 F.3d at 14 (same); *Xiaoyun Lucy Lu v. AirTran Airways, Inc.*, 631 F. App'x 657, 661 (11th Cir. 2015) (same).

Here, Plaintiff's failure to contest the Motions to Dismiss necessarily fails to make this showing. Further, the facts alleged in the Amended Complaint do not show that the pilot's decision to remove Plaintiff was so unreasonable as to be arbitrary and capricious. Plaintiff alleges that multiple Southwest flight personnel believed that she had a serious allergy and may have problems flying with dogs aboard. (SAC ¶¶ 15–17.) Plaintiff further alleges that they were so concerned that they "threatened the Capitanitan [sic] with an unauthorized, unlawful, wildcat strike, if he did

6

not order Dr. Daulatzai removed." (*Id.* ¶ 41.) Faced with such significant concerns from his colleagues, the captain's decision to remove Plaintiff cannot be deemed arbitrary or capricious. *Karrani*, 825 F. App'x at 536 ("[T]he airline pilot was entitled to accept the attendant's report . . . even if, on hindsight, it is exaggerated.").

Second, Plaintiff's state-law claims are barred by the ADA's preemption provision, which prohibits states from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The Fourth Circuit has extended this preemption provision to state law claims that would have the "practical effect" of "allow[ing] the fifty states to regulate an area of unique federal concern—airlines' boarding practices." *Smith v. Comair, Inc.*, 134 F.3d 254, 258–59 (4th Cir. 1998).[4]

Here, Plaintiff's core assertion in Claim VI is that Defendants were negligent in their decision to remove Plaintiff from the flight. (*See* SAC ¶ 76 (arguing that Defendants "were negligent in removing Plaintiff from Flight 1525").) Permitting this claim would "frustrate [ ] important federal objective[s]. Airlines might hesitate to refuse passage in case of potential danger for fear of state law." *Smith*, 134 F.3d at 259. Accordingly, Plaintiff's negligence claim is squarely preempted by the ADA.

Although Southwest argues that Plaintiff's malicious prosecution claim is likewise preempted by the ADA (*see* Southwest Mot. Dismiss Mem. Supp. at 22, ECF No. 42), the tension between this claim and federal law is not as clear. Courts have held that the ADA preempts claims

---

[4] It is unclear whether the holding of *Smith* is that the state-law claims challenging boarding practices are field preempted by § 41713(b)(1), conflict-preempted by § 44902(b), or both. *See Smith*, 134 F.3d at 258 (relying on Fifth Circuit case law that itself "rel[ied] on prior versions of 49 U.S.C. § 44902(b) *and* § 41713(b)(1) to hold claim alleging wrongful exclusion from flight preempted."); *see also Virginia Uranium, Inc. v. Warren*, 848 F.3d 590, 594 (4th Cir. 2017) (discussing both forms of preemption). Under either reading Plaintiff's negligence claim is plainly preempted by the ADA.

7

related to decisions by airlines to have police arrest and remove passengers—but Defendants identify no case law extending preemption to incidents collateral to arrest, such as malicious prosecution. *See O'Carroll v. Am. Airlines, Inc.*, 863 F.2d 11, 12 (5th Cir. 1989) (arrest and removal by police); *Covino v. Spirit Airlines*, 406 F. Supp. 3d 147 (D. Mass. 2019) (state police involved in removal). Indeed, *Kreith v. American Airlines*, which Southwest cites as a "good example" of the scope of preemption (Southwest Mot. Dismiss Mem. Supp. at 26), held that the ADA did *not* preempt a tort claim arising from defamatory statements made by an airline as to the reason for a passenger's removal. Civ. No. JZL-20-1593, 2021 WL 780716, at *2 (N.D. Ill. Mar. 1, 2021). Here, too, it would seem that any post-removal tortious conduct by Southwest would not be preempted.

However, the Court need not definitively resolve whether this is the case because, even assuming Plaintiff's malicious prosecution claim is not preempted, it plainly fails. To adequately plead malicious prosecution under Maryland law, a Plaintiff must allege "(1) a criminal proceeding instituted or continued by defendant against the plaintiff; (2) without probable cause; (3) with malice, or with a motive other than to bring the offender to justice; and (4) termination of the proceeding in favor of the plaintiff." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000) (emphasis added) (citation omitted). Though Defendants' motions raise doubts about whether various elements are adequately plead, the most straightforward flaw in Plaintiff's allegation is that the prosecution did not terminate in her favor.

A prosecution terminates in favor of a criminal defendant "when any of the following occur: a judge discharges the accused at a preliminary hearing, refusal of a grand jury to indict, the formal abandonment of the proceedings by the public prosecutor, quashing of an indictment or information, acquittal, or a final order in favor of the accused by a trial or appellate court."

*Candelero v. Cole*, 831 A.2d 495, 500 (Md. 2003) (internal quotation marks and citation omitted). A favorable disposition must occur for each offense with which a person is charged for the prosecution to be deemed favorably terminated. *Id.* ("[T]he State *nolle prossed* all the charges except disobeying the lawful order of a police officer, for which Candelero was convicted . . . the outcome of the proceeding was not favorable to Candelero."). Probation before judgment is not a favorable disposition of a criminal charge "because probation before judgment . . . requires a finding of guilt." *Howard Cnty. Dept. of Social Servs. v. Linda J.*, 869 A.2d 404, 408 (Md. 2005). As Plaintiff received probation before judgment on the charge of disorderly conduct, the state criminal proceedings did not terminate in her favor and her malicious prosecution claim fails.

### B. Claims Against the State of Maryland (Counts II-VI)

Plaintiff brings the same claims for malicious prosecution and negligence against Maryland; these fail for the same reason. In addition, Plaintiff brings three additional claims against Maryland: false arrest/false imprisonment (Count III); battery (Count IV); and constitutional claims under both federal and state law (Count V). These three additional claims must also be dismissed.

Under the *Heck* doctrine, Plaintiff's probation before judgment requires dismissal of her federal constitutional claim. *See Heck v. Humphrey*, 512 U.S. 477 (1994). This doctrine precludes federal courts from adjudicating a § 1983 claim that would "necessarily imply the invalidity of [plaintiff's state] conviction or sentence." *Id.* at 487. Here, a finding that the officers lacked probable cause to arrest Plaintiff would necessarily imply that the probation before judgment entered against her was invalid. (*See* SAC ¶ 73 ("By seizing and detaining Dr. Daulatzai without a warrant, the police officers deprived her of [her] rights, privileges, and immunities.").); *see also Atwater v. City of Largo Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to

9

believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").[5]

Plaintiff's state claims fare no better, as Plaintiff has failed to exhaust the administrative requirements to bringing those claims imposed by the Maryland Tort Claims Act ("MTCA"). *See* MD. CODE ST. GOV'T §§ 12-101 *et seq.* The MTCA, "if otherwise applicable, encompasses constitutional torts and intentional torts," and therefore applies to all of Plaintiff's state law claims. *Higginbotham v. Pub. Serv. Com'n of Md.*, 985 A.2d 1183, 1193 (Md. 2009) (quoting *Lee v. Cline*, 863 A.2d 297, 307 (Md. 2004)). And, while the MTCA permits suit directly against the State for certain tortious conduct by its employees, a plaintiff must first comply with the administrative proceedings established by § 12-106(b). Despite Maryland twice raising the MTCA as a bar in prior motions to dismiss, Plaintiff's Second Amended Complaint still does not plead compliance with the MTCA's administrative prerequisites. Accordingly, the state law claims are barred by § 12-106(b).

Defendants' Motions provide several further reasons the Second Amended Complaint fails to state any plausible claim. The Court does not reach these additional arguments because it concludes that the aforementioned arguments are sufficient to show that Defendants' unopposed motions for dismissal are far from "meritless." *Benton*, 2017 WL 588468, at *2. Plaintiff's Second Amended Complaint will be dismissed.

### IV.   *Conclusion*

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 41, 42) will be GRANTED.

---

[5] Technically, Plaintiff's allegations only suggest a violation of her rights under the Maryland Constitution. (SAC ¶ 73.) However, because Count V asserts "Deprivation of Rights in violation of 42 U.S.C. § 1983," the Court (and Maryland in its Motion) presumes Plaintiff intended to assert the parallel federal constitutional right to be free from arrests not supported by probable cause. *See Miller v. Prince George's Cnty., Md.*, 475 F.3d 621, 628 (4th Cir. 2007).

DATED this 25 day of August, 2021.

BY THE COURT:

_____
James K. Bredar
Chief Judge